[No. A022826. First Dist., Div. Five. May 13, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
ROY LEE CLARK, Defendant and Appellant.

COUNSEL

Warren I. Blum, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Ronald E. Niver and John H. Sugiyama, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

KING, J.—■ In this case we hold that a trial court has no duty to initiate midtrial proceedings to determine a defendant's competency to continue representing himself where, despite a defendant's abusive manner and failure to understand and follow the rules of procedure, his conduct does not suggest he lacks the mental capacity to waive the right to counsel.

Roy Lee Clark appeals from a judgment of conviction for possession of a firearm by an ex-felon (Pen. Code, § 12021). We affirm the judgment.

Clark was arrested on November 4, 1981, after police received a report that a man was brandishing a firearm in a public park. Clark fled from an investigating officer and threw away a loaded .38 caliber revolver. Two

other officers blocked Clark's path and apprehended him, and the first officer retrieved the handgun. In the course of a booking search an officer found seven .38 caliber cartridges in one of Clark's pockets. Clark had four prior felony convictions (two in 1963 for robbery and possession of marijuana, and two in 1970 for discharging a firearm at a vehicle and possession of a firearm by an ex-felon).

A preliminary hearing occurred on December 21, 1981. Clark was represented by counsel at the hearing. He subsequently made a written motion in his own handwriting for dismissal under Penal Code section 995, pointing out that no firearm had been entered into evidence at the preliminary hearing. He appeared in propria persona at the hearing on the motion. The magistrate granted the motion, stating in a minute order that "the evidence as to the possession of a gun is not complete."

A second preliminary hearing occurred on January 21, 1983. Clark was represented by counsel, but he immediately requested permission to represent himself. After determining Clark's level of education (high school and some college) and warning him of the hazards of self-representation, the magistrate granted the request. The firearm was presented at the second preliminary hearing. Clark was held to answer, and an information charged him with violating Penal Code section 12021. Clark again moved to dismiss under Penal Code section 995; this motion was unsuccessful.

At the outset of trial the court reminded Clark of his right to counsel, but Clark reasserted his desire to represent himself. He then made a rambling argument for suppression of the firearm on the bases that he "didn't have a weapon at all" and no weapon was presented at the first preliminary hearing. The court denied the motion. Trial then commenced. Clark participated in jury selection, exercising all of his peremptory challenges. He made an opening statement, in which he denied possession of the firearm or the bullets and pointed out the absence of the firearm and bullets from the first preliminary hearing, arguing that "if they had a gun to present and bullets to present, it would seem like they would have presented that gun and those bullets the first time that I came to the Preliminary Hearings." He cross-examined witnesses coherently and presented closing argument.

Clark behaved very poorly, however, and displayed unfamiliarity and disregard for the rules of procedure. He repeatedly attempted to cross-examine a witness concerning the absence of the gun at the first preliminary hearing, despite the court's rulings that the point was irrelevant. He attempted to testify concerning the underlying circumstances of his prior felonies, despite the court's repeated admonitions that he could not do so. The record indicates Clark became visibly enraged by the end of trial. He ver-

bally abused the judge, accusing him of "running a flim-flam game." When the bailiff attempted to get Clark to sit down, Clark called the bailiff a "dirty mother fucker" and said, "You niggers ain't nothin', man." Clark interrupted the judge during jury instructions, saying, "Frameup. Frameup." After the verdict was announced Clark called the judge a "snake." The court found him in contempt twice, once for disobeying the court's ruling that he could not discuss the circumstances of his prior convictions, and once for interrupting the court and counsel.

The jury found Clark guilty, and the court imposed the upper term of three years' imprisonment. Clark is represented by counsel on appeal.

Clark contends the trial court should have initiated proceedings during trial to determine his competence to represent himself, because his conduct at trial showed he was unable to conduct his defense in a rational manner. He cites his inability to understand and follow the rules of procedure, his hostile and offensive conduct during trial, and the revelation in a posttrial probation report that he had been diagnosed in 1970 as "schizophrenia, paranoid variety, in borderline control" and in 1972 as a "schizoid personality, with a history of sociopathic behavior and paranoid-like ideations."

■ Clark confuses the standard for permitting self-representation with the standard for determining mental competence to stand trial or be adjudged to punishment under Penal Code sections 1367 and 1368. Under the latter standard, a defendant cannot be tried or adjudged to punishment unless (1) he is capable of understanding the nature and purpose of the proceedings against him, (2) he comprehends his own status and condition in reference to such proceedings, and (3) he is capable of assisting his attorney in conducting his defense or is capable of conducting his own defense in a rational manner. (*People* v. *Conrad* (1982) 132 Cal.App.3d 361, 369-370 [182 Cal.Rptr. 912].) This standard is not applicable to the issue of whether a defendant should be afforded the right to self-representation.

■ A criminal defendant has a federal constitutional right to represent himself if he voluntarily elects to do so. (*Faretta* v. *California* (1975) 422 U.S. 806, 835 [45 L.Ed.2d 562, 581-582, 95 S.Ct. 2525]; *Ferrel* v. *Superior Court* (1978) 20 Cal.3d 888, 891 [144 Cal.Rptr. 610, 576 P.2d 93].) Before permitting self-representation, the court must determine not whether the defendant is capable of conducting his defense in a rational manner, but simply whether he has the *mental capacity to waive the right to counsel* with a realization of the probable risks and consequences of his action. (*People* v. *Teron* (1979) 23 Cal.3d 103, 113 [151 Cal.Rptr. 633, 588 P.2d 773], disapproved on another point in *People* v. *Chadd* (1981) 28 Cal.3d 739, 750, fn. 7 [170 Cal.Rptr. 798, 621 P.2d 837]; *People* v. *Zatko* (1978) 80

Cal.App.3d 534, 544-545 [145 Cal.Rptr. 643]; *Curry* v. *Superior Court* (1977) 75 Cal.App.3d 221, 226 [141 Cal.Rptr. 884].) Some courts have adopted the formula that " 'a defendant must be free of mental disorder which would so impair his free will that his decision to waive counsel would not be voluntary.' " (*Curry* v. *Superior Court, supra,* 75 Cal.App.3d at p. 227, quoting Silten & Tullis, *Mental Competency in Criminal Proceedings* (1977) 28 Hastings L.J. 1053, 1066; *People* v. *Wolozon* (1982) 138 Cal.App.3d 456, 461 [188 Cal.Rptr. 35].) The applicable standard "is *not* similar to that of Penal Code section 1368." (*Curry* v. *Superior Court, supra,* 75 Cal.App.3d at p. 227; italics in original.) Nor is the defendant required to be competent to serve as counsel in a criminal proceeding; his technical legal knowledge is irrelevant to the assessment of his knowing exercise of the right to self-representation. (*People* v. *Teron, supra,* 23 Cal.3d at p. 113; *Curry* v. *Superior Court, supra,* 75 Cal.App.3d at p. 226.) The only issue is whether the defendant has the mental capacity to waive the right to counsel.

Clark does not claim he was incompetent to stand trial or be adjudged to punishment under Penal Code sections 1367 and 1368. Furthermore, he concedes in his opening brief that "the trial judge, prior to trial, correctly determined that appellant was competent to represent himself and had made a knowing and intelligent waiver of his right to counsel." Clark's sole contention is that the court should have initiated a competency hearing because Clark's irrational behavior at trial raised reasonable doubt as to his capacity "to understand the nature and the purpose of the superior court proceedings and to conduct his defense in a rational manner."

There is no authority for the proposition that a defendant has the right to a midtrial hearing on his mental capacity to waive the right to counsel after he has made an admittedly knowing and intelligent waiver. In *People* v. *Teron, supra,* 23 Cal.3d at page 114, the court held that despite trial evidence disclosing facts "which might create a question concerning the possibility of mental illness," the lower court did not abuse its discretion in failing to order a pretrial psychiatric examination, because those facts were unknown to the court at the time of the *Faretta* hearing. This ruling implies the trial court has no duty to reexamine the self-representation issue on the basis of trial evidence suggesting the possibility of mental illness. It is conceivable, though, that a defendant's conduct at trial might be so deficient or irrational as to indicate he had not been truly competent to waive the right to counsel, so that despite a prior correct *Faretta* determination the court should reconsider the waiver issue in the interests of justice. (In such cases the defendant might well be found incompetent to be tried or adjudged to punishment.)

Here, however, Clark's conduct during trial did not suggest he lacked the mental capacity to waive the right to counsel. (See *People* v. *Miller* (1980) 110 Cal.App.3d 327, 332 [167 Cal.Rptr. 816] [bizarre actions and statements do not establish lack of capacity to represent oneself]; *Curry* v. *Superior Court, supra,* 75 Cal.App.3d at pp. 227-228 [mere eccentric behavior not sufficient to show incompetence to waive counsel].) It is abundantly clear that Clark made a very unwise decision to represent himself, even though he managed to obtain a dismissal after the first preliminary hearing, to exploit at trial the failure to produce the firearm at the first preliminary hearing, and to point out at trial the prosecutor had not presented evidence of fingerprints on the firearm (after which the prosecutor presented evidence that no usable print was lifted from the weapon). Clark's claims he did not understand superior court procedure and could not conduct his defense in a rational manner relate only to his competence to serve as counsel and the foolishness of his decision to represent himself, and not to his mental capacity to waive the right to counsel.[1] The posttrial probation report did indicate a history of psychiatric problems more than 10 years in the past, but this fact was unknown at the time of the *Faretta* hearing and, in light of Clark's demonstrated ability at trial to cross-examine witnesses coherently and make reasoned challenges to the prosecutor's case, did not rise to the level of information requiring reconsideration of the waiver issue in the interests of justice.

The judgment is affirmed.

Low, P. J., and Haning, J., concurred.

---

[1] The old adage that a lawyer who represents himself has a fool for a client does have some basis in fact. Although it is even more foolish for a defendant who is not a lawyer to represent himself in a criminal proceeding, being foolish is not a violation of law.