Filed 11/6/20  P. v. Gentry CA5
Opinion on rehearing

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>JERMAINE ANTOINE GENTRY,<br><br>  Defendant and Appellant. | F077025<br><br>(Super. Ct. No. F17903665)<br><br>**OPINION** |

### THE COURT*

APPEAL from a judgment of the Superior Court of Fresno County.  Gary D. Hoff, Judge.

Rachel Varnell, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler and Lance E. Winters, Chief Assistant Attorneys General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Clara M. Levers, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*      Before Poochigian, Acting P.J., Detjen, J. and Peña, J.

In 2018, appellant argued that trial counsel was ineffective at the sentencing hearing for failing to object to the imposition of an upper term for counts 1 and 2, for failing to argue that middle terms should be imposed, and for failing to challenge the reasons given by the sentencing court for imposing the upper terms. Appellant further argued that the court violated the prohibition against the dual use of facts by imposing upper terms based in part upon three prior prison terms that were used to impose enhancements. We disagreed and affirmed. Appellant filed a petition for rehearing which we granted. We now conclude the prior prison term enhancements must be stricken and defendant resentenced.

## INTRODUCTION

On August 29, 2017, appellant was charged by information with unlawful driving or taking of a vehicle (Veh. Code, § 10851, subd. (a); count 1) and receiving stolen property (Pen. Code, § 496d, subd. (a); count 2).[1] The information alleged that appellant had suffered a prior strike conviction (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)), and three prior prison terms (§ 667.5, subd. (b)).

On October 26, 2017, appellant admitted the strike prior and the three prior prison terms.

On October 27, 2017, appellant pled no contest to counts 1 and 2 in exchange for a sentence lid of six years.

On January 23, 2018, appellant personally submitted a motion pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, which was granted. Appellant's request to strike his three prior prison terms was denied. Appellant was sentenced to the upper term of three years for count 1 and one year for each of the prior prison terms, for a total of six years in state prison. The court also imposed the upper term of three years for count 2, but stayed punishment pursuant to section 654.

---

[1] Further statutory references are to the Penal Code, unless otherwise noted.

# FACTUAL AND PROCEDURAL BACKGROUND

On June 19, 2017, the victim left her car parked in front of her house with the keys in the ignition. She ran inside the house to grab something, and when she returned, the car was gone. She reported the theft to the police.

On June 21, 2017, peace officers observed the victim's car in a parking lot. After a short period of time, the officers saw the car leave and when it was parked again, they saw appellant get out of the car. As the officers approached appellant, he threw the car keys on the ground.

After waiving his *Miranda*[2] rights, appellant told the police he received the car from a woman whom he knew as "Bubbles" and he used the car to drive to the store and visit a friend. The victim arrived and told the officers that her neighbor believed the neighbor's brother, appellant, took the car.

The probation report found two aggravating factors and no mitigating factors. The report cited appellant's prior convictions and sustained petitions in juvenile proceedings as being numerous or of increasing seriousness and appellant's prior performance on probation or parole was unsatisfactory. The report recommended the midterm.

At the sentencing hearing on January 23, 2018, appellant's trial counsel argued, in pertinent part, as follows:

> "[DEFENSE COUNSEL]: And I believe one of the documents he submitted refers to the 2002 conviction. It's set forth on page 6 of the RPO for a [section] 12022[, subdivision] (a)(1), and it looks like there was a misdemeanor conviction of a [section] 243[, subdivision] (e)(1). I believe [appellant] is saying he wasn't properly—I don't think he elaborated, but I think he's saying he wasn't properly represented by counsel when he suffered those convictions.

---

**2**      *Miranda v. Arizona* (1966) 384 U.S. 436.

3.

"THE COURT: And which two specifically?

"[DEFENSE COUNSEL]: I believe it's the 220—on page 6 of the RPO there's a, reference that looks like the date of the incident was February 25th, 2002. There is a disposition set on April 17th, 2002, which amounted to a conviction for felony possession of dangerous weapon, [section] 12022[, subdivision] (a)(1), and a misdemeanor conviction for battery of a spouse or cohabitant, [section] 243[, subdivision] (e)(1). And it looks as though [appellant] is asking for that conviction to be stricken, or at least from the, sentencing relief from that on the grounds that he feels he was not properly represented by counsel at that time. I guess he can elaborate on that if he wishes." [¶] … [¶]

"[DEFENSE COUNSEL]: Well, I think what [appellant], and I know, again, that he used pleading paper and he included some case cites in his, in his paperwork, but those are pretty much the standard case cites that I think we're generally familiar with. I think we all know as we came in here today, both as a matter of law and both as a matter of court's indicated disposition that led to this change of plea, that the court retained the sentencing discretion to [*Romero*] the strike and to strike or stay the three one-year prison priors that [appellant] admitted to. I think we knew that coming in and I think [appellant]'s paperwork, in effect, amounts to a request for the court to exercise that sentencing discretion. I don't think any new or unique legal argument, although [appellant] did present, again, some case law on pleading paper, but I don't think any unique argument is being presented by him. He is simply—I suppose he would need, to the extent the court is able to strike or stay the 2002 conviction as a one-year prison prior based on alleged ineffective assistance of counsel of 2002, I suppose [appellant] would need to make a factual showing. So if the court's going to consider that, maybe the People's request for a continuance has merit. Beyond that, I think this is a request for sentencing discretion." [¶] … [¶]

"[DEFENSE COUNSEL]: So far as his request for a [*Romero*] of the prior strike is concerned, I note there's some age to the strike. It's a 2007 conviction. I do anticipate the People and the court perhaps will express concern if there was an institutional crime committed afterwards and a few violations of post release community supervision. Nevertheless, the instant offense I would maintain is a lesser degree of criminality than the 2007 strike, that his 2007 strike.

"And for whatever it's worth, but I'm not at all suggesting it's binding on this court, but there was an initial indicated by Judge Idiart in the lower court that he would [*Romero*] the strike. I'm not in any way

4.

suggesting this court is bound by Judge Idiart's indicated sentence which took place at an earlier point in this proceedings. I guess that is significant just for the purpose of stating reasonable minds can look at [appellant]'s record and determine that he is, that [*Romero*] relief is appropriate for him. So I'll ask the court to provide him with [*Romero*] relief and I'll submit on his request to—I'll submit on his request for, to strike or stay the one-year prison priors." [¶] … [¶]

"[DEFENSE COUNSEL]: I'll make one additional remark. [¶] I believe the instant offense was, involved a taking of a neighbor's car while the key was in the ignition and the motor was running. I think [appellant] lived on the premises. Not suggesting his actions were justified in any way, but in the overall scheme of things it's a fairly good inference he was going to bring that car back. I don't think he was planning to leave the area or change residence. So it's a fairly good inference he was planning to bring the car back. And this was more in the nature of a temporary deprivation of ownership or possession rather than a permanent one. I'll submit on that." [¶] … [¶]

"[DEFENSE COUNSEL]: There was an indicated—again, there was an indicated—I'm looking at page 4 of the preliminary hearing transcript before, [defense counsel] actually conducted the preliminary hearing transcript, and for whatever it's worth there is clearly an ending before the prelim starts, there is clearly an indicated—I'm not going to read the entire conversation. The court can review it. There is clearly an indicated of a [*Romero*] by [J]udge Idiart. Again, I'm not suggesting this court is in any way bound by that, and clearly [appellant] would be in a better position if he'd accepted that indicated at the time, but there was that indicated. And I understand, it was not offered by the People, but it was offered by the court presiding over [appellant]'s case at that time for whatever it's worth. Submit it."

The court granted appellant's *Romero* motion, denied his request to strike any of the prior prison terms, and denied probation. The court sentenced petitioner as follows:

"For the felony offense in [c]ount 1 under Vehicle Code [s]ection 10851[, subdivision] (a), the court is imposing the aggravated term of three years. The court has selected the aggregated [*sic*] term or upper term based upon his prior criminal history and the circumstances of the current offense. In addition to that three-year commitment to the California Department of Corrections and Rehabilitation in [c]ount 1, the court is adding three separate one-year enhancements for the three prison

5.

priors under … [s]ection 667.5[, subdivision] (b) for a total commitment of six years for [c]ount 1.

"As to [c]ount 2, the receiving stolen property offense, the court is again selecting the aggregate term of three years upper term. That's stayed pursuant to … [s]ection 654.

"[Appellant], I am giving you a break notwithstanding the fact that this is your fifth felony conviction and one of those priors is a strike prior. If you continue to have difficulty with the law, I don't think any other judge is going to be willing to strike a strike or give you a break on any of your prison priors because you will have demonstrated that you're not worthy of additional chances, and I anticipate the next time you get in trouble, if you do for a felony offense, you're looking at a significant period of time doubled by the strike."

## DISCUSSION

### A. Ineffective Assistance of Counsel

Appellant admits that it is his burden to establish " 'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.' " (*Strickland v. Washington* (1984) 466 U.S. 668 (*Strickland*).) This standard is "highly demanding" and requires a defendant to prove "gross incompetence." (*Kimmelman v. Morrison* (1986) 477 U.S. 365, 382.) "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " (*Strickland*, *supra*, 466 U.S. at p. 689.)

> " 'Reviewing courts defer to counsel's reasonable tactical decisions in examining a claim of ineffective assistance of counsel [citation], and there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." ' [Citations.] '[W]e accord great deference to counsel's tactical decisions' [citation], and we have explained that 'courts should not second-guess reasonable, if difficult, tactical decisions in the harsh light of hindsight' [citation]. 'Tactical errors are generally not deemed reversible, and counsel's decision making must be evaluated in the context of the available facts.' " (*People v. Weaver* (2001) 26 Cal.4th 876, 925–926.)

6.

In this case, trial counsel did present arguments, quoted above, which urged the trial court to grant appellant a lenient sentence. A lenient sentence could have consisted of imposition of the middle terms, granting the *Romero* motion, and not imposing any enhancements for the prior prison terms. A *Romero* motion and a motion to strike or stay the enhancements had already been submitted to the sentencing court—further argument on those issues may have seemed futile to trial counsel. Trial counsel also presented arguments which attempted to minimize the level of criminality demonstrated by the current offense. Thus, trial counsel did, in essence, present the basic arguments which appellant claims should have been advanced at sentencing.

> "Moreover, the purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation, although that is a goal of considerable importance to the legal system. The purpose is simply to ensure that criminal defendants receive a fair trial." (*Strickland*, *supra*, 466 U.S. at p. 689.)

Even assuming that trial counsel's arguments were incomplete, it is appellant's burden to show that the appellate record affirmatively establishes that counsel did not have a legitimate tactical reason for the nature of his arguments or that there could not be a legitimate tactical reason for those arguments.

In *People v. Mendoza Tello* (1997) 15 Cal.4th 264, trial counsel failed to make a motion to suppress evidence pursuant to section 1538.5. On appeal, the defendant argued that failure constituted ineffective assistance of counsel. The Supreme Court rejected that argument, stating:

> " 'Because the legality of the search was never challenged or litigated, facts necessary to a determination of that issue are lacking.' [Citation.] The issue at trial was whether defendant possessed cocaine, not whether the deputy acted unlawfully. We have repeatedly stressed 'that "[if] the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged[,] … unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation," the claim on appeal must be rejected.' " (*People v. Mendoza Tello, supra,* 15 Cal.4th at p. 266.)

"[B]ecause, in general, it is inappropriate for an appellate court to speculate as to the existence or nonexistence of a tactical basis for a defense attorney's course of conduct when the record on appeal does not illuminate the basis for the attorney's challenged acts or omissions, a claim of ineffective assistance is more appropriately made in a habeas corpus proceeding, in which the attorney has the opportunity to explain the reasons for his or her conduct." (*People v. Wilson* (1992) 3 Cal.4th 926, 936.)

In this case, appellant has failed to meet his burden of showing that the appellate record contains an explanation for trial counsel's decisions that establishes those choices constituted ineffective assistance of counsel. His reliance upon the sentencing court's statement that his trial counsel could argue for a lesser sentence is misplaced because the court merely noted the known ability of counsel to make such arguments and, thus, the trial court's statement does not imply that such arguments would be successful. The fact that appellant, on his own behalf, filed a *Romero* motion and a motion to strike the charged enhancements for his prior prison terms could merely have been the result of counsel's acquiescence to the insistent requests of appellant because such discussions between them are not part of the record in this appeal.

At the commencement of the hearing held on October 27, 2017, the court stated:

"This morning counsel approached the court concerning scheduling for this trial as well as defense counsel showing the handwritten note from [appellant] asking whether the six-year lid was still available to him.

"[Appellant], what I did in talking to your counsel with the [d]istrict [a]ttorney present said that I, from what I've seen from your case so far, knowing whatever criminal history has been made available to me, that that six years is not an unreasonable amount of time in custody as a maximum, but that since we had started with the trial itself you would have to enter pleas to all charges, enhancements or allegations including the priors, and that at the time of sentencing the [d]istrict [a]ttorney could argue for any sentence that they felt was appropriate, you and your counsel could argue for any sentence that you felt was appropriate for your case, and that the court would sentence you to no more than six years, but I could arrive at that, up to that six-year lid with any scheme that the court felt was appropriate, and by that I mean it could include imposing the strike which would have some consequences as to time credits."

This court has no record of what was discussed between trial counsel, the district attorney, and the court at that meeting to evaluate whether what was said influenced the nature of trial counsel's arguments during the sentencing hearing. (Cf. *People v. Osband* (1996) 13 Cal.4th 622, 728–729; *People v. Price* (1991) 1 Cal.4th 324, 491–492; *People v. Sanchez* (1982) 131 Cal.App.3d 718, 736–737; *People v. Bejarano* (1981) 114 Cal.App.3d 693, 706–707.)

Under the authorities cited above and the record before this court, we cannot conclude that trial counsel was ineffective for not presenting more extensive arguments and objections to the sentence imposed upon appellant. It necessarily follows that appellant forfeited his challenges to that sentence and the reasons given for that sentence by the sentencing court. (*People v. Scott* (1994) 9 Cal.4th 331, 353; *People v. Erdelen* (1996) 46 Cal.App.4th 86, 90–91 [Appellant's failure to object to the improper dual use of facts to impose the upper term forfeited the issue.].)

## B. Prejudice

Even assuming that the record was adequate to conclude that counsel was ineffective, and appellant's challenges to the sentence were not forfeited, appellant must establish that a different result was reasonably probable. (*Strickland*, *supra*, 466 U.S. at p. 687.) "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test, [citation], and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." (*Id*. at p. 693.) Appellant " 'must establish "prejudice as a 'demonstrable reality,' not simply speculation as to the effect of the errors or omissions of counsel." ' " (*In re Cox* (2003) 30 Cal.4th 974, 1016.)

The Supreme Court has held that in imposing sentence a court has "broad discretion" and "a trial court is free to base an upper term sentence upon any aggravating circumstance that the court deems significant, subject to specific prohibitions.

[Citations.] The court's discretion to identify aggravating circumstances is otherwise limited only by the requirement that they be 'reasonably related to the decision being made.' " (*People v. Sandoval* (2007) 41 Cal.4th 825, 847–848 (*Sandoval*).)

> " 'Improper dual use of the same fact for imposition of both an upper term and a consecutive term or other enhancement does not necessitate resentencing if "[i]t is not reasonably probable that a more favorable sentence would have been imposed in the absence of the error." ' [Citation.] Only a single aggravating factor is required to impose the upper term [citation], and the same is true of the choice to impose a consecutive sentence [citation]. In this case, the court could have selected disparate facts from among those it recited to justify the imposition of both a consecutive sentence and the upper term, and on this record we discern no reasonable probability that it would not have done so. Resentencing is not required." (*People v. Osband*, *supra*, 13 Cal.4th at pp. 728–729.)

The probation officer's report summarized appellant's juvenile criminal history as consisting of felony attempted robbery (§§ 664/211) in 1994; misdemeanor vehicle theft (Veh. Code, § 10851) in 1996; misdemeanor hit and run with property damage (Veh. Code, § 20002, subd. (a)) in 1997; and felony possession of a controlled substance or narcotic for sale (Health & Saf. Code, § 11351.5) in 1997.

Appellant's adult criminal history was listed as: felony possession of a controlled substance (Health & Saf. Code, § 11350, subd. (a)) and misdemeanor battery on a spouse or cohabitant (§ 243, subd. (e)(1)) in 2001; misdemeanor attempt to dissuade a witness or victim from testifying (§ 136.1, subd. (a)(2)) in 2001; felony possession or manufacture of a dangerous weapon (§ 12022, subd. (a)(1)) and misdemeanor battery of a spouse or cohabitant (§ 243, subd. (e)(1)) in 2002; parole violation (§ 3056) in 2003; parole violation (§ 3056) in 2005; felony shooting at an inhabited dwelling or vehicle (§ 246) in 2007; parole violation (§ 3056) in 2010; felony prisoner in possession of a weapon (§ 4502, subd. (a)) and an habitual offender enhancement (§ 667, subds. (b)-(i)) in 2013; violation of postrelease community supervision (PRCS) (§ 3455, subd. (a)) in 2015; violation of PRCS, flash incarceration (§ 3454) in 2016; violation of PRCS (§ 3455,

subd. (a)) three times in 2016; and violation of PRCS (§ 3455, subd. (a)) in 2017. The "Risk Assessment Score" in the probation report was estimated to be "High Violent."

As noted above, the sentencing court had broad discretion to determine the significance and seriousness of appellant's criminal history. (*Sandoval*, *supra*, 41 Cal.4th at pp. 847–848.) We conclude that the above quoted history supports the court's determination.

Appellant also attempts to minimize the level of criminality demonstrated by the current offense. For example:

> "Additionally, the 'circumstances of the current offense' did not justify the upper term for counts [1] and [2]. Appellant took a car from his sister's neighbor (Prob. Rept. 7), and the car was running and had the keys in it. Even the prosecutor admitted, in arguing against the *Romero* motion, 'this case may not be the most egregious case that has been before the court … .' (1RT 22.) Compared to appellant's prior felony convictions, this one was relatively minor. Appellant did not break into the car or hotwire it, and it is unclear based on the facts presented whether he intended to permanently deprive the owner of the car. Thus, the circumstances of the current offense do not justify the imposition of the upper term."

The prosecution's assessment of the present offense was not binding on the sentencing court. Determining the seriousness of the present offense was within the discretion of the sentencing court. (*Sandoval*, *supra*, 41 Cal.4th at pp. 847–848.) The trial court was within its discretion in concluding that the circumstances of the present offense reflected that appellant posed a significant danger to himself and the community.

After imposing sentence, the court emphasized that the sentence imposed was an exercise of leniency toward appellant as follows:

> "[Appellant], I am giving you a break notwithstanding the fact that this is your fifth felony conviction and one of those priors is a strike prior. If you continue to have difficulty with the law, I don't think any other judge is going to be willing to strike a strike or give you a break on any of your prison priors because you will have demonstrated that you're not worthy of the additional chances, and I anticipate the next time you get in trouble, if

11.

you do for a felony offense, you're looking at a significant period of time doubled by the strike. Do you understand that?"

It is apparent from the above quoted statement of the court that the judge considered the imposition of the three-year upper term and the prison enhancements to be the minimum sentence appellant deserved.

We conclude that had trial counsel offered more extensive arguments or objections to the sentence imposed upon appellant, a different result was not reasonably probable.

On September 24, 2019, an opinion was filed in this appeal affirming the conviction.

On October 23, 2019, a petition for rehearing was filed and granted on the sole issue of whether the three enhancements for prior prison terms should be stricken pursuant to Senate Bill No. 136 (2019-2020 Reg. Sess.). The prior opinion was vacated.

In supplemental briefing, the parties correctly agreed that Senate Bill No. 136 applied retroactively to appellant's sentence requiring that the three enhancements be stricken and that the remittitur should issue when the new opinion is filed. (*People v. Winn* (2020) 44 Cal.App.5th 859, 872–874.)

## DISPOSITION

This case is remanded to the Fresno County Superior Court for resentencing with directions to strike the three enhancements imposed for appellant's prior prison terms pursuant to the agreement of appellant and the Attorney General.

With the exception of the resentencing described above and the entry of a modified abstract of judgment, the conviction is otherwise affirmed. The superior court shall send an amended abstract of judgment to the Department of Corrections and Rehabilitation.

Pursuant to a stipulation of the parties, the Clerk/Executive Officer of this court is authorized to issue the remittitur forthwith on the day this opinion is filed.